MATHESON v. CAMPBELL.

(Circuit Court, S. D. New York. May 18, 1896.)

1. PROCESS AND PRODUCT PATENTS—ANTICIPATION—CHEMICAL IDENTITY.
    The fact that a coal-tar dye, similar to a dye covered by a process and product patent, and answering to the chemical tests of the patent, was on sale in this country prior to the application, is not sufficient to show anticipation, where it appears that such prior patent was not identical therewith, as shown by the fact that it was made from a different starting material, was much inferior in quality, and was sold at a much higher price. 69 Fed. 597, affirmed, on rehearing.

2. SAME—VALIDITY OF PRODUCT PATENT.
    Where a patent first describes a new and patentable process, producing an article chemically or technically identical with an article formerly known, but superior thereto, and the invention is a meritorious one, a valid claim may be made for the product, as well as for the process. 69 Fed. 597, affirmed, on rehearing.

3. SAME—INFRINGEMENT—BURDEN OF PROOF.
    In a suit for infringement of a process and product patent covering a composition or chemical product, the complainant has sustained the burden of proof, resting on him, as to infringement, when he shows that defendant's product corresponds to the tests of identity; and the burden is then upon defendant to show that it was not made by the patented process.

4. SAME—COLOR COMPOUNDS—COAL-TAR PRODUCTS.
    The Hoffman and Weinberg process and product patent, No. 345,901, for a naphthol-black color compound, made from coal-tar products, held valid and infringed. 69 Fed. 597, affirmed, on rehearing.

This was a suit in equity by William J. Matheson against John Campbell for alleged infringement of patent No. 345,901, issued July 20, 1886, to Meinhard Hoffman and Arthur Weinberg, and assigned to complainant. The circuit court construed and sustained the patent, and found that the defendant's product infringed the same, but left the case open for further proofs as to the date of the sale complained of. 69 Fed. 597. Further proofs were accordingly made, and thereafter an order was made for a decree for injunction and accounting. Subsequently, on motion of defendant, a rehearing was granted, and the cause has again been argued to the court.

Henry P. Wells, for complainant.

E. N. Dickerson, for defendant.

TOWNSEND, District Judge. Counsel for defendant insists that the court, in its original opinion (69 Fed. 597), has confused a patent for a product with an invention of a process, and has therefore sustained a claim for a product merely because the process by which the product was obtained has patentable novelty and invention. On a careful re-examination of said opinion, I fail to find any such confusion. It may well be that the patentee should have claimed the process separately, as well as the product of such process. The invention was found to have been meritorious and beneficial to the public. The language of the opinion, in which the scope of the patent is stated, is as follows:

"I conclude, therefore, that the multifariousness of the general formula does not invalidate the whole patent, but that said patent may be valid, at least where so limited as to embrace only the product of the special process, definitely stated and applied to naphthylamine-disulphonate of sodium, as specifically claimed."

Defendant further argues that, if the product of the patent is identical with or equivalent to an article in use or on sale in this country prior to the date of the alleged invention, it is anticipated, and that the evidence both of complainant's and defendant's experts shows that, although the azo-black formerly sold was made from a different starting material, namely, a mono-sulpho acid, instead of a di-sulpho acid, it answers all the tests of the patent, and other well-known tests not therein named, and that the azo-black is therefore the equivalent of naphthol-black, and so anticipates it. The contention on the part of the defendant may be most strongly put as follows: The court has found that a certain black, known as "azo-black," was imported into the United States prior to the date of the patent in suit, which is now known to be in fact a naphthol-black, and which corresponds with the tests of the patent, and certain other tests. The products, therefore, are chemically identical. The defendant's color also corresponds to the tests of the patent, and certain other tests, and is found to be chemically identical with it. Therefore, the defendant forcibly claims, if the defendant's color is an infringement, the azo-black is an anticipation, and cites Reed v. Cutter, 1 Story, 598, Fed. Cas. No. 11,645, and Coffin v. Ogden, 18 Wall. 124. He argues that the patentee herein is not the original inventor of the patented product, because such product was known

and used prior to his invention, although such knowledge and use were secret.

Whatever may be the similarity or equivalency chemically, I do not understand that the azo-black was commercially or practically the same thing as the black of the patent in suit. It is true, as the chemical experts state, azo-black is now known to be naphthol-black. But it nowhere appears that said color and the patent color are practically identical. In addition to the statements as to nonidentity in the original opinion, it appears from uncontroverted testimony that the original azo-black is not a product embraced within the special process of the patent in suit, but is only covered by the general formula which was rejected by the court. Assuming that this alleged anticipating azo-black was publicly sold in this country prior to the application for the patent in suit, it further appears, from the testimony of Dr. Schweitzer, that in 1887, two years after said application, the Badische manufactory had just stopped the manufacture of this secret coloring matter, and that "that coloring matter rubbed off very badly, and was very inferior to naphthol-black, which at that time appeared in the market. It was so inferior to the naphthol-black that the Badische took out a license for manufacturing and selling naphthol-black, which license they used until now." It further appears that this prior azo-black was only imported to this country for about 18 months. It was, therefore, manifestly inferior to the patented naphthol-black, and the latter appears to have entirely superseded the other in actual use. If, as I have concluded, the patented product is superior to said azo-black, it is not identical therewith, and a patent therefor may be sustained. Furthermore, counsel for complainant shows that the azo-black tested by defendant's expert was a sample produced by Dr. Limpach in 1892, and that his tests differ substantially from the tests of the earlier azo-black as stated in Schults and Julius' Tables, a recognized authority on coal-tar colors.

The further question arises, where a patent first describes a new and patentable process, producing a superior article, and where said product is chemically or technically identical with an article formerly known, and a claim is made for the product of the described process, and the invention is meritorious, will the rules of liberal construction allow a claim for the product of the described process to be sustained? I have held that they will. The claim is:

"As a new product the herein-described dyestuff or coloring matter, and capable of dyeing shades of dark blue, as set forth."

The description contained in the specification consists only of a statement of the starting material which differs from that of azo-black and of the process specifically described.

In Rubber Co. v. Goodyear, 9 Wall. 795, the claim was as follows:

"What is claimed as the invention of Charles Goodyear, deceased, is the new manufacture of vulcanized India rubber (whether with or without other ingredients), chemically altered by the application of heat, substantially as described."

The court says a patent should be construed in a liberal spirit, to sustain the just claims of the inventor. This principle is not to

be carried so far as to exclude what is in it, or to interpolate anything which it does not contain. But liberality, rather than strictness, should prevail, where the fate of the patent is involved, and the question to be decided is whether the inventor shall hold or lose the fruits of his genius and his labors.

In Smith v. Vulcanite Co., 93 U. S. 486, 493, the claim was as follows:

"The plate of hard rubber or vulcanite, or its equivalent, for holding artificial teeth, or teeth and gums, substantially as described."

The court says:

"The invention, then, is a product or manufacture, made in a defined manner. It is not a product alone, separated from the process by which it is created. The claim refers, in terms, to the antecedent description, without which it cannot be understood. The process detailed is thereby made as much a part of the invention as are the materials of which the product is composed."

In Pickhardt v. Packard, 22 Fed. 530, 531, the claim was as follows:

"As a new manufacture, the coloring matter or sulpho-acid of dinitro-alpha naphthol obtained from the action of nitric acid upon the within described alpha-naphthol sulpho-acids, substantially in the manner set forth, or by any other method which will produce a like result."

Judge Wallace says:

"The claim of the patent is not to be construed as one for his coloring matter, obtained by any method or process of treating the alpha-naphthol sulpho-acids with nitric acids, but for any method of treatment which is the equivalent of the process described, because it produces like results. The claim is capable of this construction, and should be construed so as, if possible, to secure the real invention to the patentee."

In Holliday v. Pickhardt, 29 Fed. 853, the court said, quoting from Cochrane v. Badische Anilin & Soda Fabrik, 111 U. S. 293, 4 Sup. Ct. 455:

"Every patent for a product or composition of matter must identify it, so that it can be recognized aside from the description of the process for making it, or else nothing can be held to infringe the patent which is not made by that process."

And adds:

"The patent does not fall within the category of those in which the claim is limited by its terms to a product produced by a specified process, nor of those in which the article is old, but is made by a new process, or made by machinery, instead of hand. Rubber Co. v. Goodyear, 9 Wall. 788."

This clearly implies that there may be patents limited to a product produced by a special process.

Defendant claims that, as the chemical tests used to identify his article with the product of the patent also identify azo-black as that product, there is no proof that defendant's article was made by said process, and infringes said patent. In Pickhardt v. Packard, supra, the court says, concerning the question of infringement:

"It was not shown by the complainants that the defendants' coloring matter was made by the process described in the patent, nor was any evidence to the contrary produced by the defendants. The proofs show satisfactorily, however, that the defendants' coloring matter possesses the peculiar characteristics of the patented article. Sufficient appears to establish the chemical identity of the defendants' coloring matter with the complainants' by the evidence of the results produced by

each in experimental tests. As these results were new until Caro's process was employed, a sufficient prima facie case is shown upon the question of infringement."

It appears, as already stated, that, although the original azo-black corresponds to the tests of the patent, it was produced from a different starting material, and was not a subject of the special process of the patent, as interpreted by the court. On the other hand, in the case of defendant's color, it not only appears that it corresponds to said tests, but the defendant's expert admits that, in making defendant's color, he uses the starting materials named in the special process described in the patent in suit. The theory upon which the court has decided this branch of the case, and which it has found no occasion to depart from after the argument for a rehearing, is as follows: Complainant has sustained the burden of proof which is upon him, when he has shown, as to infringement, that the alleged infringing product corresponds to the tests of identity. The burden is then upon defendant to show that the product, being identical in chemical composition, was not produced by the patented process. This the defendant has failed to do. In the case of a prior sale of an article which corresponds to the tests of the patent, where the composition of said article is a secret, and cannot be ascertained by investigation or analysis, it may or may not constitute an anticipation. But proof of such sale imposes upon the defendant the burden of showing that said product, although identical in chemical composition, is not the product claimed in the patent in suit, because it is either produced from different starting materials, or by a different process, or has other different characteristics. Pickhardt v. Packard, supra. Although this matter was briefly considered in the original opinion, it was not more fully discussed because, as the court said, in passing upon the questions of equivalency under the general formula:

"In view of the conclusions reached, the consideration of these matters was unnecessary; but it seemed desirable, in the peculiar circumstances of this case, to pass upon the various points raised, in order that they may be more readily presented upon appeal."

The invention covered by this patent was of great benefit to the public. The fact that the prior azo-black was sold in small quantities, at a high price, and was of comparatively little use to the public, whereas, by complainant's invention, a superior article is produced at a lower price, and is a marked commercial success, entirely replacing the original article in the market, is of much greater importance in the determination of the question of equivalency than are any mere chemical tests, as to the sufficiency and effect of which the experts differ and the court is in doubt.

Counsel for defendant contends that, if the product is identical, it makes no difference as to the materials of which it is composed. Without passing upon this contention, I think, in a case of doubt as to the evidence of identity, the difference in starting material may be used as one of the tests in the determination of the doubt. A careful examination of the testimony, and further consideration of arguments of counsel, have satisfied the court that, whatever

may be the general rule, the complainant in this case has affirmatively shown that the alleged anticipating product was not identical with the product of the patent in suit. It is only fair to counsel for defendant to say, however, that, in view of the forcible and exhaustive presentation of his case, I have reached, with considerable hesitation, the conclusions of law herein stated as to the scope of said patent; and, while I believe that substantial justice will be promoted by protecting this meritorious invention, and the facts of its commercial success and extensive public use may be considered in its support, I trust that the question as to the correctness of the views herein stated may be reviewed and settled by the appellate court.

A decree may be entered for an injunction and an accounting.